Case 1:19-cr-00015-SPW   Document 63   Filed 07/24/20   Pa

FILED
7/24/2020
Clerk, U.S. District Court
District of Montana
Billings Division

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JACK PRESTON COVERSUP, <br><br> Defendant. | CR 19-15-BLG-SPW <br><br> ORDER DENYING MOTION FOR MISTRIAL |

## I.   Background

The ongoing COVID-19 pandemic is one of the most significant crises in generations and has had a profound impact on public health, the economy, and society. As of July 23, 2020, Montana has seen over 2,800 cases of the deadly virus and at least 42 deaths. The N.Y. Times, *Montana Coronavirus Map and Case Count*, https://www.nytimes.com/interactive/2020/us/montana-coronavirus-cases.html (last visited July 23, 2020). The virus is now spreading at an alarming rate in the state, with an average of 100 cases per day since July 14—worse even than the initial spike in April. *Id.*

The pandemic's impact is felt everywhere, but especially in courtrooms, where judges, lawyers, witnesses, defendants, courtroom staff, the public—and

1

jurors—must all work together in close quarters. Yet the courtroom, as an integral part of society, must continue to function to guarantee access to justice and, especially, to ensure criminal defendants enjoy their right to due process, a speedy and public trial by an impartial jury, and all other rights enshrined in the Constitution.

To accomplish this, following Montana's initial lockdown, the District of Montana adopted a five-phase plan for the resumption of operations and a plan to reconvene jury trials during the pandemic. Admin. Order 20-21 (May 14, 2020). At present, the Billings courthouse is in Phase 3 and is open with limited services, including jury trials. Before, during, and after criminal jury trials, several procedures are in place for the safety of jurors, defendants, and all others involved. Courtroom staff works tirelessly to ensure social distancing, mask-use, sanitization, and other health concerns are met.

Balancing each defendant's rights with public health and safety during the pandemic has proven challenging, but it is a duty the Court undertakes in earnest. Against this backdrop, the Court turns now to the trial of the Defendant, Jack Preston Coversup.

Trial commenced on Monday, July 13, 2020. The Tuesday before, court staff sent a questionnaire regarding COVID-19 to 70 prospective jurors who had already received a summons. 54 jurors responded that they were healthy and had no contact

2

with anyone who had tested positive for the virus, so they could attend the trial. Over the next two days, however, 16 jurors updated and changed their answers on the COVID-19 questionnaire and would be unable to attend. Two more jurors needed to be excused for work. Therefore, court staff called another 22 jurors on July 10th. Only five could attend trial. From then until July 13th, five more jurors updated and changed their answers to the COVID-19 questionnaire and would be unable to attend. Therefore, on the morning of July 13th, 39 jurors were present for *voir dire* out of the 92 whom court staff contacted.

To abide by this Court's practice in criminal trials, the parties must pass 31 jurors for cause: the defendant is allowed 11 peremptory challenges, the Government is allowed seven, and the Court empanels 12 jurors and retains one alternate. The Federal Rules require 28 jurors at a minimum: the defendant is entitled to 10 peremptory challenges, the Government is entitled to six, and the Court must empanel 12 jurors. *See* Fed. R. Crim. P. 23(b), 24(b)(2). Yet here, the Court excused 12 jurors for cause because they stated they could not be fair and impartial due to the nature of the charges. After both the Government and Coversup passed the jury for cause, only 27 prospective jurors remained. The Government therefore agreed to waive one of its peremptory challenges, and the Court resolved to proceed without an alternate. After the parties exercised their strikes, the Court empaneled 12 jurors.

3

On the morning of the second day of trial, a juror informed court staff that one of her friends with whom she spent the prior weekend had fallen ill with symptoms indicating her friend may have contracted COVID-19. The Court called the juror into the courtroom to be questioned by the parties. She stated she felt healthy but her friend had been tested for COVID-19 the night before. She informed the Court her friend would receive test results within a week.

Outside the presence of the jury, the Court and counsel discussed options for proceeding. Coversup did not wish to stipulate to a jury of fewer than 12 persons under Rule 23(b)(2). Therefore, as the juror's friend anticipated receiving results within a week, the Court recessed trial for two weeks to await the results. This period also allowed the juror to quarantine for 14 days following her contact with her friend, which abides by the current CDC recommendations. *See* CDC, *Quarantine If You Might Be Sick*, https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last accessed July 23, 2020). Coversup made a verbal motion for a mistrial to which the Government objected, and he requested additional time for briefing. The Court reserved ruling on the motion until the matter could be fully briefed. The Court then called the jury back in, explained the situation, and reread the pattern instruction given before the jury's first recess. *See 9th Cir. Pattern Jury Instr.* 2.1 (2019).

Coversup has now filed a written motion and accompanying brief, (Doc. 60; doc. 61), and the Government has filed a response, (Doc. 62).[1]

The juror's friend's test results have since come back negative.

## II.   Discussion

"Criminal defendants have a right to have the jury first empaneled to try them reach a verdict. This right is not absolute, however, and must at times be subordinated to society's interest in just determinations of guilt or innocence." *United States v. Bates*, 917 F.2d 388, 392 (9th Cir. 1990) (citing *Wade v. Hunter*, 336 U.S. 684, 689 (1949)) (internal citations omitted).

The decision whether to grant a mistrial is reserved to the broad discretion of the district court. *Renico v. Lett*, 559 U.S. 766 (2010).

> [T]rial judges may declare a mistrial "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity" for doing so. The decision to declare a mistrial is left to the "sound discretion" of the judge, but "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*Id.* at 773–74 (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)). Nevertheless, the manifest necessity standard "cannot be interpreted literally," and

---

[1] "Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. The Court provided the parties the opportunity to comment on the propriety of a potential mistrial both in-person and through briefing. The Court proposed two alternatives: Coversup could stipulate to an 11-person jury, or the Court could recess for two weeks. Coversup now argues for a mistrial, (Doc. 61), and the Government argues the two-week recess is the more reasonable alternative (Doc. 62 at 2).

"a mistrial is appropriate when there is a 'high degree' of necessity." *Id.* at 774 (quoting *Arizona v. Washington*, 434 U.S. 497, 506 (1978)).

Though the two-week recess and other circumstances regarding the COVID-19 pandemic are unique in the Court's experience, Coversup has not persuaded the Court that there is a high degree of necessity to declare a mistrial.

First, Coversup has not shown that the jurors have allowed themselves to be influenced by any outside information during the recess. Jurors are presumed to follow the instructions the Court gives them. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the . . . jury acted according to law.")

The Court instructed the jurors not to discuss the case with anyone, including fellow jurors, family members, and people involved in the trial, and not to allow others to discuss the case with them. The Court also instructed the jury not to read, watch, or listen to any information about the case or to conduct any independent research on it. Finally, the Court instructed the jury to keep an open mind until all the evidence has been presented.

Coversup has not alleged any facts indicating the jurors have not followed the Court's instruction to distance themselves from anything that could influence them

6

regarding the case. The Court presumes they have followed its instructions in the days since the recess began.

Second, Coversup has not convinced the Court that the two-week delay has caused him actual prejudice amounting to a high degree of necessity for a mistrial. A district court has "full discretion in determining whether the jury shall be allowed to separate at any particular time during the course of the trial"—even a separation for several days. *United States v. Diggs*, 649 F.2d 731, 738 (9th Cir. 1981) (quoting *Sullivan v. United States*, 414 F.2d 714, 715 (9th Cir. 1969)). "[T]he circuits are virtually unanimous that in order for a jury separation to constitute reversible error, the defendant must show that he suffered actual prejudice because of the separation." *Id.* (collecting cases).

In *Diggs*, the Ninth Circuit found no reversable error in an 11-day separation due to a juror's illness. *Id.* The defendant argued (as Coversup largely does) that the separation prejudiced him because the jurors' memories were vague, some jurors might have began deliberating during the separation, and there might have been pressure for a quick verdict out of concern for the ailing juror. *Id.* at 737–38. However, the circuit found the defendant's perceived prejudice was hypothetical and the record did not disclose the existence of any actual prejudice. *Id.* at 738.

Nevertheless, the Court's discretion here is not without limits. In *United States v. Hay*, 122 F.3d 1233, 1235 (9th Cir. 1997), after a trial lasted over a month

7

longer than expected, a district court recessed for 48 days to accommodate two jurors' vacations. The Ninth Circuit reversed the defendant's eventual conviction because "the unprecedented length of the separation 'involves such a probability that prejudice will result' that it must be deemed 'inherently lacking in due process.'" *Id.* at 1236 (quoting *Estes v. Texas*, 381 U.S. 532, 542-43 (1965)). Other considerations also drove the circuit to that conclusion, though, because there were available alternatives to a 48-day recess: the district court could have sat one of its available alternates, or the court could have proceeded with an 11-person jury, which both parties stipulated to. *Id.* at 1235.

The Court agrees with the Government that this case sits comfortably with *Diggs* rather than *Hay*. The Court found no viable alternatives to a 14-day recess. There are no alternate jurors, and the parties have not stipulated to an 11-person jury. The length of the recess is much closer to *Diggs*, and the Court does not find that the recess "involves such a probability that prejudice will result" that it is "inherently lacking in due process." *See id.* at 1236. Lastly, Coversup presents valid concerns, but they are hypothetical. He has not shown actual prejudice.

Finally, Coversup relies on *United States ex rel. Gibson v. Ziegele*, 479 F.2d 773 (3rd Cir. 1973) for the proposition that a two-week recess results in a high degree of necessity for a mistrial. There, one of the Government's key witnesses contracted a severe illness preventing him from testifying for one to two weeks or more. *Id.* at

8

775. Critically, the Government moved for a mistrial, which the Court granted after considerable discussion. *Id.* On appeal, the Third Circuit affirmed the Court's decision and found it was not an abuse of discretion. *Id.* at 776–78.

Foremost, that the Third Circuit affirmed the mistrial under an abuse of discretion standard does not mean it would have reversed had the district court recessed until the witness recovered. Under the discretionary standard, the defendant must show actual prejudice. *Diggs*, 649 F.2d at 738.

Additionally, the district court was unsure how long the witness's illness would last: "one to two weeks *or more*." *Gibson*, 479 F.2d at 775 (emphasis added). That is not the case here. The Court recessed for two weeks to allow the juror to quarantine for the appropriate period and to await COVID-19 test results that the juror's friend anticipated receiving in a week. Those results were negative, and the Court is prepared to resume trial. Accordingly,

**IT IS HEREBY ORDERED:**

1. The Defendant's Motion for Mistrial (Doc. 60) is **DENIED**.
2. Trial shall resume as originally scheduled (Doc. 57) on Monday, July 27, 2020, at 9:00 a.m. Counsel should be in the Snowy Mountains Courtroom at 8:30 a.m.

The Clerk of Court shall notify the parties of this order.

DATED the 24th day of July, 2020.

                                                 _/s/ Susan P. Watters_
                                                 SUSAN P. WATTERS
                                                 U.S. DISTRICT JUDGE